NANCI L. CLARENCE (SBN 122286)
GINA MOON (SBN 257721)
Clarence Dyer & Cohen LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
nclarence@clarencedyer.com
gmoon@clarencedyer.com

Attorneys for Defendant
ELENA MORENO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ELENA MORENO, et al.,<br><br>  Defendants. | CASE NO. CR-12-00750-03-LHK<br><br>**DEFENDANT ELENA MORENO'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>Sentencing Date:  January 21, 2015<br>Time:            9:30 a.m.<br>Judge:           The Honorable Lucy Koh |

## I.  INTRODUCTION

Defendant Elena Moreno submits this hastily-drafted response to the government's late-filed sentencing memorandum[1] in order to correct a number of incorrect and unsupported statements in the government's filing and to request that the portions of the government's sentencing memorandum that violate its plea agreement with Ms. Moreno be stricken from the record and not considered by the Court.

## II.  ARGUMENT

**A.  Portions of the Government's Sentencing Memorandum that are in Breach of its Plea Agreement with Ms. Moreno Should Be Stricken.**

After an extremely hard-fought negotiation with the government, the parties agreed that the combined offense level applicable to Ms. Moreno under the Guidelines was 20 or 21 (33-41 months or 37-46 months) but that Ms. Moreno would be permitted to seek a downward variance under 18 U.S.C. § 3553(a).  Dkt. No. 101 at 8, 10.  Despite this agreement, the government has now submitted a sentencing memorandum that asserts that the correct Guidelines level is 24 (51-63 months) and that asserts the government could have sought an even higher Guidelines sentence.[2]  Feigning generosity of spirit, the government seeks to impress the Court that its recommendation of 33-37 months represents a generous downward variance from the applicable Guidelines range of 51-63 months.  But this is not what the parties agreed.  The government cannot now strip Ms. Moreno's plea agreement of any meaning at the eleventh hour by ratcheting up its assertion of what Guidelines range applies and by implying that the government could have somehow obtained an even higher Guidelines range.

---

[1] Responses to sentencing memoranda are due today.  Because of the government's late filing of its sentencing memorandum, Ms. Moreno's counsel has had only one day to prepare a response.

[2] Counsel for Ms. Moreno notified the government that it was in breach of the plea agreement at approximately 1:13 p.m. today and requested that the government voluntarily withdraw its sentencing memorandum immediately.  As of the time of this filing, counsel for Ms. Moreno has not received a response from the government.

-1-   Case No. CR-12-00750 LHK
DEFENDANT ELENA MORENO'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM

The fact that the government ultimately recommends a sentence that falls within the Guidelines range that the parties agreed was applicable is of no import.  As our court of appeals has articulated, the government breaches a plea agreement when "it purports to make the promised recommendation while winking at the district court to impliedly request a different outcome." *See, e.g., United States v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014) (internal quotation marks omitted).  Moreover, the government's exhortations that its recommended sentence (which falls within what the parties agreed is the correct Guidelines range *before* any § 3553(a) variances) represents a meaningful downward variance to take into account § 3553(a) factors has affirmatively harmed Ms. Moreno and stripped her of the benefit of the plea agreement.

In light of the government's breach, Ms. Moreno makes the modest request that the Court strike from the record, and from its consideration:  (1) all assertions by the government that the appropriate combined offense level for Ms. Moreno under the Guidelines is 24 (and all other calculations inconsistent with the plea agreement) (Dkt. No. 113 at 2:2-4; 12:25-13:2; 13, n.3; 18:1-3); (2) the government's claims that its recommendation of 33 to 37 months represents a downward variance from the Guidelines (*Id.* at 22:9-14; 23:23-24); and (3) the government's nebulous claims that it could have argued for higher loss amounts which would have increased Ms. Moreno's Guidelines range (*Id.* at 25:24-24:3).  Ms. Moreno also requests that the Court make a finding that the parties have agreed that the applicable combined offense level under the Guidelines (from which any variance would be taken) is 20 or 21.

**B.      The Government Mischaracterizes the Evidence Regarding the Morenos' Reliance on MJ Consulting.**

The government makes much of the Morenos' attempts to modify their home loans after they went underwater on their mortgages.  However, the Morenos' efforts at loan modification are unspectacular when viewed in light of their proper context:  a family drowning in consumer debt after one of the largest housing crashes in our country's history.  When the Morenos experienced additional financial hemorrhaging after their business was raided, they were criminally prosecuted, and their competitors sent out press releases regarding their criminal prosecution, they became increasingly desperate.  Recognizing the mortgage loans that their family had taken on were

DEFENDANT ELENA MORENO'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM

1  unsustainable, the Morenos sought the advice and counsel of Yesk Law Group/MJ Consulting,
2  Inc. ("MJ Consulting") and ultimately allowed inaccurate loan modification applications to be
3  submitted on their behalf.
4        Despite Ms. Moreno's inexcusable culpability, to say that she was the manager/supervisor
5  of the loan modification industry professionals at MJ Consulting goes too far.  As articulated in
6  Ms. Moreno's sentencing memorandum, the government's assertion that Ms. Moreno could
7  somehow be a manager/supervisor of the MJ Consulting employees is nothing short of fantastical,
8  especially in light of the fact that the employees were overseen by attorney Michael Yesk.  *See,*
9  *e.g.,* Exhibit A; Dkt. No. 113-2 at 15, 33.
10        In support of its assertion that a leadership enhancement must be applied to Ms. Moreno,
11  the government relies solely upon unreliable, and at times unintelligible, translated notes from an
12  unidentified employee at MJ Consulting.  A careful examination of these notes does not support
13  the government's cavalier assertion that Ms. Moreno was the architect and driving force behind
14  the inaccurate loan modification applications generated by MJ Consulting.  Instead, the vast
15  majority of the government's citations are only to notes of conversations between MJ Consulting
16  *and the underwriters*, not MJ Consulting and Ms. Moreno.  Further, there is no indication that MJ
17  Consulting passed along the content of its critical communications with the underwriters to Ms.
18  Moreno or any of the Morenos.  Indeed, even the government's own description of the records (as
19  opposed to its conjecture of what the records might suggest could have happened) clearly describe
20  a classic client-consultant relationship in which MJ Consulting dictated what materials would need
21  to be submitted and Ms. Moreno simply complied with the discrete, secretarial tasks asked of her.
22  There is no support for the government's bare assertion that Ms. Moreno had "authority to decide
23  what documents would be provided to MJ Consulting, and perhaps more tellingly, what
24  documents *would not* be passed along to the underwriters."
25        Although Ms. Moreno's ratification of false statements on her loan modification
26  applications was dishonest and wrong, Ms. Moreno's only intention was to stay afloat and keep
27  her homes from being foreclosed upon.  The ironic reality is that the loan modifications for
28

Hillview (Ms. Moreno's home) and Cadiz (her brother-in-law's home), *avoided* significant losses to the banks. Had the Morenos allowed the homes to be foreclosed upon back in 2011, the homes would assuredly been sold at auction a substantial loss, as the real estate prices were at an all-time low.[3] The current value of the homes today, after significant market recovery, would very likely exceed their 2011 prices significantly.

**C.    The Government Has Failed to Provide Sufficient Evidence for this Court to Cast Aside the Probation Office's Recommendations Regarding Restitution and Loss.**

**1.    Restitution.**

The Probation Office determined that the appropriate restitution amount for Count Thirteen is $219,000. PSR ¶ 94. The government, however, asks this Court to increase significantly the Probation Office's recommendation by $220,735.22 (to a total of $439,735.22). Dkt. No. 113 at 10. Ms. Moreno contends that the government has not met its burden for such an increase.

Although Ms. Moreno does not contest that certain costs claimed by Wells Fargo and Nationstar Mortgage that cannot be used for calculating loss under the Guidelines may be nonetheless awarded as restitution, Ms. Moreno notes that the government seeks to double Ms. Moreno's restitution liability based solely on a vague, two-page "summary" document from Wells Fargo (Exhibit 6 to Government's Sentencing Memorandum, Dkt. No. 113-6) and a similarly vague "summary" document from Nationstar Mortgage (Exhibit 9 to Government's Sentencing Memorandum, Dkt. No. 113-9).[4] These documents are woefully inadequate to supporting the requested restitution award.

---

[3] The government's agreement with Ms. Moreno precludes it from arguing that Ms. Moreno should pay restitution associated with Hillview or Cadiz. To Ms. Moreno's surprise, however, the government has asserted that Wells Fargo has lost $53,576.08 and Bank of America has lost $39,627.60 as a result of approving loan modifications for Hillview and Cadiz, respectively. Dkt. No. 113 at 28.

[4] The government's request for increased restitution includes $33,578.35 to account for a debt cancellation by Wells Fargo, which the government asserts was in relation to the Chesbro property. Dkt. No. 113 at 9. There was no line of credit from Wells Fargo, however, taken out with respect to the Chesbro property.

**2. Loss Amount.**

The Probation Office determined that the appropriate loss amount for Count Thirteen is $219,000. PSR ¶ 22. The government, however, asserts that the correct loss amount is actually $259,938.20. This recommendation for an increase in the loss figure suffers the same infirmities as does the government's recommendation with respect to restitution and Ms. Moreno contends that the Court should adopt the PSR's recommendation as to loss amount.

Strangely, the government contends that it was benevolent in not seeking a sentence based on intended loss with respect to the mortgage fraud. Dkt. No. 113 at 24. Ms. Moreno would have much preferred a sentence based on intended loss. Contrary to the government's assertion that intended loss would exceed $2 million, the intended loss would have been $0. There is not even a shred of evidence that Ms. Moreno, her husband, or her brother-in-law took out the mortgage loans with the hope or intent that the homes they purchased with their loans would be taken away. Although they fraudulently obtained their loans, they fully intended to repay them and foolishly believed they would be capable of doing so.

### III. CONCLUSION

For the reasons stated herein and in Ms. Moreno's sentencing memorandum, the Court is respectfully urged to implement a downward variance under 18 U.S.C. § 3553(a) and sentence Ms. Moreno to a term of imprisonment no greater than twelve months and a day, to be served consecutively and staggered with her codefendant husband Fidencio Moreno and brother-in-law Arturo Moreno.

Additionally, before making is ultimate sentencing determination, the Court is respectfully requested to (1) strike from the record the government's assertions in its sentencing memorandum that are in breach of its plea agreement with Ms. Moreno; and (2) make a finding that the parties have agreed that the applicable base offense level under the Guidelines (from which any variance would be taken) is 20 or 21.

//

//

1 | Dated: January 16, 2015.  Respectfully submitted,

CLARENCE DYER & COHEN LLP

By: \_\_\_\_/s/ Nanci L. Clarence_____
     Nanci L. Clarence
     Gina Moon

Attorneys for Defendant Elena Moreno