MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

THOMAS MOORE (ALBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division

KATHERINE L. WONG (CABN 264056)
Assistant United States Attorney
Eastern District of Virginia

TODD P. KOSTYSHAK (NCBN 39830)
Trial Attorney
U.S. Department of Justice, Tax Division

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (202) 514-5145
FAX: (415) 436-7009
Todd.P.Kostyshak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 12-CR-750-LHK |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S REPLY TO DEFENDANT** |
| v. | ) **ELENA MORENO'S RESPONSE TO THE** |
| | ) **GOVERNMENT'S SENTENCING** |
| ELENA MORENO, | ) **MEMORANDUM** |
| | ) |
| Defendants. | ) Sentencing Hearing: January 21, 2015 at 9:30 am |
| | ) |
| | ) |

The United States, by and through Melinda Haag, United States Attorney, and the undersigned

attorneys, hereby submits its reply to Defendant Elena Moreno's Response to the Government's

Sentencing Memorandum.

As set forth in more detail below, the Government has not breached its plea agreement with the

*GOVERNMENT'S REPLY TO DEFENSE RESPONSE*
12-CR-750-LHK

1  Defendant, nor does it intend to do so.  In her own filings, the Defendant has acknowledged that the

2  presence investigation report (PSR) properly calculated the offense level as 24 under U.S.S.G.

3  § 2B1.1(b)(16)(D) [*See* ECF 112, at 13, *compare* Letter to Officer Dang re: Objections to Draft

4  Presentence Report (Dec. 17, 2014, at 1-2) (making no objection to the offense level 24 calculation or

5  application of § 2B1.1(b)(16)(D)).  Although the Guidelines are advisory, it is reversible error to

6  miscalculate the Guidelines range, since it is the starting point and initial benchmark of any sentencing

7  determination.  *Gall v. United States*, 552 U.S. 38, 39 (2007); *United States v. Carty*, 520 F.3d 984, 991

8  (9th Cir. 2008) (en banc); *see also United States v. Langley*, 584 Fed. App'x 570, 572 (9th Cir. 2014)

9  (finding reversible error when the Guidelines range was erroneously calculated).  The government was

10 and remains under the same obligation of candor and honesty to the Court as the Defendant.  Consistent

11 with this obligation, the government has and continues to acknowledge that the Defendant and the PSR

12 correctly calculate the offense level as 24 for Count 13; more importantly, consistent with its obligations

13 under the plea agreement, the government has and will continue to recommend that the Court sentence

14 the Defendant in accordance with the plea agreement to a sentence of 33 to 37 months' imprisonment.[1]

15 [ECF 113] The government's recommendation honors and reflects the Guidelines' range for the offense

16 levels (20 and 21) in the plea agreement; the requested variance is based only on the decrease from the

17 properly-calculated offense level to the agreed-upon sentencing range in the plea agreement, not on any

18 18 U.S.C. § 3553(a) factors.  The government submits that the a Guidelines-range sentence

19 corresponding to an offense level of 20 or 21 takes into account all relevant aggravating and mitigating

20 factors under § 3553(a), such that no further variance from this range is warranted.

21       With regards to the Defendant's challenge to the amounts, if any, that the Court should order as

22 restitution and as forfeiture, it appears the parties do not agree as to the amounts.  Further, certain

23 arguments raised by the Defendant in her sentencing memorandum may require an evidentiary hearing

24 to resolve disputed facts.  While the government is prepared to proceed tomorrow by presenting certified

___

[1] The advisory Guidelines range for an offense level of 20 is 33 to 41 months' imprisonment. The advisory Guidelines range for an offense level of 21 is 37 to 46 months' imprisonment.  U.S.S.G. ch. 5. pt.A.

*GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE*
*CR 12-750-LHK*
                                        2

business records regarding these matters, the government did not arrange for the appearance or testimony of witnesses from the financial institutions, who could answer questions regarding where the numbers came from and/or otherwise independently verify the information.  The government did not subpoena or otherwise arrange for competent witnesses to travel, appear, or testify at the sentencing hearing set for tomorrow, January 21, 2015m because the government was not previously aware that the Defendant intended to challenge the accuracy or meaning of business records obtained from the various financial institutions until the Defendant's sentencing memorandum was filed.  Because restitution and forfeiture are important components of the Defendant's sentence, the government respectfully recommends that if the factual issues cannot be resolved on the documentary evidence, that the Court set a hearing date within 90 days after sentencing for a final determination of both restitution and forfeiture amounts.  *See* 18 U.S.C. § 3664.

I.    **DISCUSSION**

   a.   ***The government did not breach the plea agreement***

       Although the Guidelines are advisory, it is reversible error to miscalculate the Guidelines range, since they are the starting point and initial benchmark of any sentencing determination.  *Gall v. United States*, 552 U.S. 38, 39 (2007); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); *see also United States v. Langley*, 584 Fed. App'x 570, 572 (9th Cir. 2014) (finding reversible error when the Guidelines range was erroneously calculated).  Although not entirely clear, in this case the Defendant appears to argue that the Government breached the plea agreement by failing to object to the PSR's correct application of the Guidelines and by failing to (incorrectly) argue that the offense level for Count 13 should be 20 or 21.  The Defendant, however, appears to agree that the PSR is correct, that § 2B1.1(b)(16)(D) applies, and thus that the base offense level for Count 13 should be 24. [*See* ECF 112, at 13, *compare* Letter to Officer Dang re: Objections to Draft Presentence Report (Dec. 17, 2014, at 1-2) (making no objection to the offense level 24 calculation or application of § 2B1.1(b)(16)(D)).

The Court should find that the government has not breached the plea agreement.  Rather, the government has followed the same procedure that the Ninth Circuit sanctioned in *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000), and that was subsequently cited with approval in *United States v. Manzo*, 675 F.1204, 1211-1212 (9th Cir. 2012).  Here, as in *Maldonado*, there is no controverted matter regarding the base offense level set forth in the PSR.  215 F.3d at 1050.  Rather "[a]ll parties initially erred in calculating" the base offense level.  *Id.*  In *Maldonado*, the error stemmed from determining the marijuana equivalency of the drugs; at sentencing, however, all parties in *Maldonado* agreed on the amount of drugs, and that the resulting base offense level was 34, not 32 as stated in the plea agreement.  At sentencing, the government acknowledged the error, and stood by its recommendation that the Court impose a sentence consistent with the Guidelines range for a base offense level of 32.  *Id.* at 1049.

     The Ninth Circuit held that the government had not breached the plea agreement.  *Id.* at 1051-52.  In so holding, the Court of Appeals explained that "despite a plea agreement to make certain recommendations, the government has a duty to ensure that the court has complete and accurate information, enabling the court to impose an appropriate sentence."  The Ninth Circuit went on to hold that although the plea agreement "obligated the government to recommend a base offense level of 32," the government did not breach the agreement by acknowledging its calculation error and "honestly providing the correct calculations and responding to the district court's direct questions."  *Id.*  Rather, the government "fulfilled its obligations," which includes providing honest responses to direct judicial inquiry – a professional obligation that "cannot be barred, eroded or impaired by a plea agreement."  *Id.*

     In *United States v. Manzo*, 675 F.3d 1204, 1211-1212 (9th Cir. 2012), the Ninth Circuit provided further guidance on the proper procedures in a situation like this, where the plea agreement contains an erroneous calculation of the offense level.  In *Manzo*, the Court of Appeals explained that the

government did not breach the plea agreement by admitting error in the Guidelines calculations, and "then performing as promised under the plea agreement, namely to recommend that the district court, in its discretion, sentence [the Defendant] in accordance with the promised figure [the base offense level in the plea agreement]." *Id.* In *Manzo*, the government was properly truthful with the district court regarding the correct applications of the Guidelines (in that case, the grouping provisions), but erred in then recommending a sentence within the revised Guidelines range (corresponding to offense level 38), rather than the range corresponding to the offense level in the plea agreement (offense level 34). *Id.*; *see also United States v. Agli*, 533 Fed. App'x 733, 734 (9th Cir. 2013) (finding no error affecting the defendant's substantial rights when the district court properly calculated the offense level, even though it was higher than the offense level in the plea agreement and the government did not advocate for the incorrect offense level in the agreement).

Here the government, like defense counsel, has acknowledged that it erred in calculating the offense level for Count 13 in the plea agreement. Despite Defendant's contention to the contrary, the government did not inform the Court of this error because it was "winking" at the Court or "impliedly request[ing] a different outcome." [ECF No. 114, at 3] Rather, the government did so because of its duty of candor and honesty to the Court, and the necessity under *Carty* and its progeny to assure that the "starting point" for the Defendant's sentence was a correct computation of the applicable offense level under the Guidelines. 520 F.3d at 991.

Moreover, the government is asking that the Court honor the plea agreement by imposing a sentence consistent with an offense level of 20 or 21, which is what the plea agreement contemplated. The Guidelines range for these offense levels is 33 to 41 months' imprisonment and 37 to 46 months' imprisonment, respectively. The government's recommendation is 33 to 37 months' imprisonment. This sentence is, by definition, a variance from the applicable Guidelines' range for an offense level of

24.  Defendant's assertion that the government advocates for a "meaningful downward variance to take into account § 3553(a) factors" is misplaced. [ECF 114, at 3].  The government recommends only a variance to a sentence within the Guideline range equivalent to the offense level agreed upon in the plea agreement; no further downward variance is appropriate based on any of the factors set forth in 18 U.S.C. § 3553(a).  In arguing that the recommended sentence of 33-37 months takes into account all aggravating and mitigating factors in 18 U.S.C. § 3553(a), the government has not harmed the defendant or "stripped her of the benefit of the plea agreement."  [ECF 114, at 3]

Rather, as the Ninth Circuit explained in *Maldonado* and *Manzo*, what the Defendant was entitled to under the plea agreement is what she is receiving: namely, a recommendation by the government that she be sentenced to a term of imprisonment within the Guidelines range for an offense level of 20 or 21.  The plea agreement does not entitle the Defendant to force the government affirmatively misrepresent or mislead the Court regarding the application of the Guidelines.

    b.  *Restitution*

In her response to the Government's Sentencing Memorandum, Defendant Moreno appears to challenge the sufficiency of the government's evidence regarding the amount of restitution owed to two victims of her fraud, Wells Fargo Bank and NationStar Mortgage. [2]  [ECF No. 114, at 4]  "The preponderance of evidence standard is generally the appropriate standard for factual findings used for sentencing." *United States v. Felix*, 561 F.3d 1036, 1045 (9th Cir 2009) (citing *United States v. Dare*, 425 F.3d 634, 642 (9th Cir.2005).  Title 18, United States Code Section 3664(e) codifies that standard of proof for determining restitution.  In this case, the evidence regarding the amount of restitution includes

---

[2] While the parties also disagree about the amount of loss for calculations under § 2B1.1, the government and the defense appear to agree that the loss is in a range of more than $200,000 but less than $400,000, so the offense level is unaffected by this disagreement.  Accordingly, the government does not believe a separate hearing to determine loss is necessary in order to determine the offense level for Count 13.

*GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE*
*CR 12-750-LHK*

detailed, line-item descriptions of the expenses.  The documentary evidence that the government seeks to offer regarding restitution are certified business records and, as such, should be considered reliable and admissible. While it is not entirely clear from the pleadings, it appears that the Defendant nonetheless takes issue with the records.  To the extent that the Defendant now seeks to challenge the business records, the government respectfully requests an opportunity to call competent witnesses from the financial institutions who can explain the records.  Absent such specific challenges, however, the records on their face are sufficient for the Court to find the amount of restitution owed to the different financial institutions.[3]

a. **Forfeiture**

The government believes that the PSR is correct in stating that forfeiture is mandatory in this case because the Defendant was convicted of a crime that provides for forfeiture as part of the penalty. *See* PSR ¶ 98, 18 U.S.C. § 982(a)(2)(A).  Section 982(a)(2)(A) provides, in relevant part, that the court "in imposing sentence on a person convicted of a violation of, or a conspiracy to violate . . . (A) section . . . 1343, or 1344 of this title, affecting a financial institution . . . shall order that person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation."  The Ninth Circuit has held that forfeiture is mandatory in cases where this statute applies. *Carter*, 742 F.3d at 446; *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989); *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) ("the district court has no discretion to reduce or eliminate mandatory criminal forfeiture").  In such instances, a defendant "may

---

[3] The necessity of an evidentiary hearing was previously discussed by the parties.  In these exchanges, defense counsel indicated a desire to avoid an evidentiary hearing.  In part based on the parties' conversations, as well as the certified business records obtained from the financial institutions, the government did not subpoena witnesses for the January 21, 2015, hearing.  The government is, however, prepared to proceed with documentary evidence.  To the extent the Defendant now requests a an evidentiary hearing, the government respectfully requests that, pursuant to 18 U.S.C. § 3664(d)(5), the Court conduct such a hearing within 90 days after sentencing, as necessary.  That 90-day limit is for the benefit of "the victims, not the victimizers." *United States v. Marks*, 530 F.3d 799, 811-12 (9th Cir. 2008)

be required to pay restitution and forfeit the same amounts." *Carter*, 742 F.3d at 446 (citing cases).

Further, a defendant has no right to a credit against a restitution order equal to any part of the amount

forfeited. *Id.*

Defendant's assertion that "there has been an insufficient showing that forfeiture, in addition to

restitution, is appropriate" [ECF No. 112, at 21] is misplaced – the plain language of § 982(a)(2)(A)

does not require any showing by the government (or finding by the Court) that forfeiture is

"appropriate." Rather, § 982(a)(2)(A) requires forfeiture when a person is convicted of certain crimes,

including conspiracy to commit bank fraud and wire fraud, of which the Defendant was convicted. In

this case, the factual basis of the Defendant's plea provides the factual basis and nexus required to

determine forfeiture.

Further, Defendant's attempts to argue that imposition (or amount) of forfeiture is tied to

restitution misstates the law. The Ninth Circuit's has repeatedly admonished that "[c]riminal forfeiture

is also separate from restitution, which serves an entirely different purpose." *United States v. Newman*,

659 F.3d 1235, 1240 (9th Cir. 2011). The government believes that the PSR is correct in stating that

Defendant's offense of conviction requires forfeiture. Accordingly, forfeiture is properly part of the

Defendant's sentence, regardless of any determination regarding restitution.

The Defendant also appears to argue that the Court should not order forfeiture for the amount

sought in the PSR because the Defendant is not the owner of record for some of the real properties that

were purchased using the proceeds of the bank and wire fraud conspiracy. The defendant's argument

appears to improperly ask the Court to consider and determine the ownership interests, if any, of third

parties who are not part of the Defendant's criminal case. The statutes and procedures that govern

criminal forfeiture specifically instruct the factfinder *not* to consider whether any third party has an

interest in the property sought to be forfeited when entering a preliminary order of forfeiture: "The court

must enter the [preliminary order of forfeiture] without regard to *any* third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."  Fed. R. Crim. P. 32.2(b)(2), *United States v. Lazarenko*, 476 F.3d 648 (9th Cir. 2007).  A determination of the property rights, if any, of third parties is left to a separate, ancillary proceeding under 18 U.S.C. § 853(n), in which the defendant has no part.  18 U.S.C. § 853(n).

A corollary of the rule that a third party must wait to contest criminal forfeiture in an ancillary proceeding – and that an ancillary proceeding is the *only* means for claiming such an interest – is that the Defendant cannot delay or prevent forfeiture by arguing someone else owns the property sought to be forfeited.  A defendant arguing that someone else owns the property sought to be forfeited is nothing more than a backdoor attempt to litigate the interests of an absent third party, which is exactly what § 853(k) and Rule 32.2 prohibit.

Further, while the issue of "ownership" may determine how much the government ultimately recovers, it does not affect the inquiry at this juncture.  The question before the Court is whether certain money or property should be found forfeitable.  Tellingly, the statutes that authorizes forfeiture, § 982(a)(1) and § 2461(c), make no mention of "owners" or "ownership."  Instead, the statutes direct the Court to order forfeiture of property "constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation."  *See* § 982(a)(1).  The only question before this Court is whether "the government has established the requisite nexus between the property and the offense."  Rule 32.2(b)(1)(A).

In this case, the requisite nexus is shown and satisfied by the factual basis of the Defendant's guilty plea, as well as the loan documents that show the amounts and purpose of the loans obtained by and through the bank and wire fraud conspiracy.  It is undisputed that all of the loans were authorized

and the proceeds disbursed at the direction and for the benefit of the conspirators, which include this Defendant. The fact that this Defendant and her coconspirators agreed that her name would not be on the title of all the properties that were purchased using these proceeds is not relevant to this inquiry. The amount that the PSR recommends be forfeited is based on the total amount of the loans proceeds, which were both the object and fruits of the conspiracy.

IV.     **CONCLUSION**

For the foregoing reasons, the Court should find that the government has not breached the plea agreement. With regards to the forfeiture amount, the factual basis for the Defendant's plea is sufficient for the Court to order forfeiture in the amount of the loans obtained through the conspiracy, which represent "property constituting, or derived from, proceeds that the person [the Defendant obtained directly . . . as the result of" the bank and wire fraud conspiracy. As the Defendant admitted, all of these proceeds were used to purchase and/or refinance the properties outlined in the Indictment. To the extent the Court finds that it requires testimony from employees of NationStar Mortgage or Wells Fargo to determine the amount of restitution or forfeiture, the government recommends that the Court set a hearing within 90 days for a final determination of these amounts, so that the government can make the arrangements for the necessary witnesses to appear and testify.


Dated this 20th day of January, 2015.

Respectfully submitted:
MELINDA HAAG
United States Attorney


 /s/   *Katherine L. Wong*
KATHERINE L. WONG
Assistant United States Attorney
Eastern District of Virginia

 /s/ *Todd P. Kostyshak*
TODD P. KOSTYSHAK

Trial Attorney, Tax Division

Attorneys for the United States

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Government's Sentencing Memorandum was served on all parties named below on January 20, 2015.

___ United States Mail, postage prepaid
___ Hand delivery
___ Facsimile Transmission (fax)
___ Federal Express
_X_ ECF Filing

Nanci Clarence
Gina Moon
Clarence Dryer & Cohen LLP
899 Ellis St
San Francisco, CA 94109
nclarence@clarencedyer.com

*Attorneys for Elena Moreno*

 */s/ Katherine L. Wong*
Katherine L. Wong

*GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE*
*CR 12-750-LHK*